UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRY ADLER,

        Plaintiff,

        Case No. 08-CV-13170

vs.

        HON. GEORGE CARAM STEEH

DELL, INC., et al.,

        Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

This purported class action arises out of plaintiff Barry Adler's ("Adler") purchase of a Dell computer which came with a one-year onsite warranty repair service agreement. Adler alleges that defendants charged him for the onsite warranty repair service without notifying him of his option to opt out. On behalf of himself, and all others similarly situated, Adler has brought suit under the Michigan Consumers Protection Act (MCPA), M.C.L.A. § 445.901 et seq., and the Michigan Pricing and Advertising Act, (MPAA), M.C.L.A. § 445.351 et seq. Now before the Court is defendants' motion to compel arbitration. Oral argument was heard on December 2, 2008. For the reasons set forth below, defendants' motion shall be granted.

## BACKGROUND

Adler bought a Dell computer over the internet in March, 2004 for $1,848.80. (Doc. 5, Exhibit A at 6). According to the complaint, Adler purchased the computer for

his household use.[1]  Adler claims Dell misled him, and members of the proposed class, by leading him to believe that the first year service contract came standard and without disclosing that he had the option to purchase the computer without the service agreement for a lower price.

Adler has brought suit against Dell, Inc. and four of its alleged subsidiaries: Dell Catalog Sales, L.P., Dell Products, L.P., Dell Marketing, L.P. and Dell USA, L.P.  He has also brought suit against  BancTec, Inc. and Qualxserve, LLC,  who also allegedly provide the onsite warranty repair service at issue in this case.   All of the defendants are represented by the same counsel and have joined together to file their motion to compel arbitration.[2]  For purposes of deciding defendants' motion to compel, the Court shall refer to the defendants collectively as "Dell."  Dell moves to compel arbitration based on a dispute resolution clause contained in the purchase contract between Dell and Adler.

Adler originally filed this lawsuit in Wayne County Circuit Court and Dell removed on the basis of the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) and 1453. According to the notice of removal, since July 1, 2002, Dell has sold over 500,000 computers in Michigan that included the onsite warranty repair service for one year. Adler alleges that the cost of the onsite warranty repair service is an amount believed to be less than $100.  Taking alleged economic damages in the amount of $99 for each

---

[1]Defendants assert that the computer was delivered to Adler's Farmington Hills law office.

[2]Adler also has brought suit against 10 John Doe defendants whose identities are unknown to him.

putative member of the class, Dell estimates that the total claim could exceed $49,000,000.

Dell alleges, and Adler does not dispute, that when he ordered his computer online, he could have read the "Terms and Conditions of Sale" by clicking on the blue hyperlinks that appeared on each page of the online ordering process. (Doc. 5, Exhibit A at 3). In addition to the hyperlink, at the final page of the ordering process, Dell notified its customers, "All sales are subject to Dell's Terms and Conditions of Sale." Id. At the time that Adler ordered his computer, Dell's practice was to send an e-mail confirmation to its purchasers which contained a notice in bold letters stating that "**ALL SALES ARE SUBJECT TO DELL'S TERMS AND CONDITIONS OF SALE. YOU CAN FIND THEM BY CLICKING HERE: Terms and Conditions of Sale.**" Id. at 4. The underlined "**Terms and Conditions of Sale**" contained a hyperlink which if clicked on by the purchaser would take the buyer to Dell's then applicable Agreement. Id. at 4.

Around March 12, 2004, Dell sent Adler a paper invoice (Doc. 5, Exhibit D) which contained a notice on the front that read, "PLEASE REVIEW IMPORTANT TERMS & CONDITIONS ON THE REVERSE SIDE OF THIS INVOICE." The back of the invoice contained the full text of the Terms and Conditions of Sale, including the alleged agreement to arbitrate individual claims only. Dell also alleges that at the time of Adler's purchase, its customers received a paper copy of the Agreement with the delivery of their computer. Id. The first page of that agreement, sets forth in bold, capitalized and boxed language the following instructions:

**PLEASE READ THIS DOCUMENT CAREFULLY! IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND**

**OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS THAT MAY APPLY TO YOU.  THIS DOCUMENT CONTAINS A DISPUTE RESOLUTION CLAUSE.**

Id.  The Agreement contained a provision requiring binding arbitration.  Paragraph 12 of the Agreement provides:

> ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns or affiliates (collectively for purposes of this paragraph, "Dell") arising from or relating to this Agreement its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect (available via the internet at **http://www.arb-forum.com**, or via telephone at 1-800-474-2371).  The arbitration will be limited solely to the dispute or controversy between Customer and Dell.  Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction.  Information may be obtained and claims may be filed with the NAF at P.O. Box 50191, Minneapolis, MN 55405.

(Doc. 5, Exhibit A).  Based on the above quoted arbitration provision, Dell argues that Adler must arbitrate any and all disputes arising from or relating to the Agreement. Based on the language, "[t]he arbitration will be limited solely to the dispute or controversy between Customer and Dell," Dell argues that Adler is prohibited from bringing a class action.  For purposes of deciding Dell's motion to compel only, this Court shall assume that the above quoted language waives class action relief.  The question, however, remains unresolved and shall be for the arbitrator to decide in the first instance.

4

In sum, Dell asserts that Adler had notice of the arbitration clause provision on at least four occasions: (1) on Dell's website when he placed the order, (2) in the e-mail Dell sent him confirming his order, (3) on the invoice Dell mailed to him separately, and (4) on the Terms and Conditions Dell included with the computer. In addition to the opportunities Adler would have had to review Dell's Terms and Conditions in connection with his March, 2004 purchase, Dell argues that Adler would have been familiar with Dell's Terms and Conditions, including the arbitration provision, based on his Dell computer purchases in 2001 and 2002. (Doc. 5, Exhibit A).

Adler argues that the arbitration clause is unfair and unconscionable because it bans class actions in alleged contradiction of the public policy underlying the MCPA and the MPAA. Moreover, Adler complains the arbitration provision is unconscionable because it requires consumers to arbitrate claims against Dell but does not require Dell to arbitrate any claims it may have against its customers; the class action waiver is not clearly stated; Dell retains the right to modify the contract at any time, thus, rendering the agreement illusory; and the National Arbitration Forum (NAF) is not a fair forum for consumers. Dell counters that arbitration before the NAF is reasonable and fair, and that the arbitration agreement must be enforced.

<u>ANALYSIS</u>

A. <u>Standard of Law</u>

Dell asserts that the arbitration agreement in the parties' contract is enforceable under the Federal Arbitration Act (FAA), 9 U.S.C. § 1-16, which was designed to encourage the enforcement of arbitration agreements "to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." <u>Stout v. J.D.</u>

Byrider, 228 F.3d 709, 714 (6th Cir. 2000) (citations omitted), cert. denied, 531 U.S.

1148 (2001).  Federal law creates a general presumption of arbitrability, and "any

doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration."  Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624, 627 (6th Cir. 2004)

(citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25

(1983)).  "The party opposing an arbitration agreement bears the burden of establishing

that the dispute is nonarbitrable."  Rex v. CSA-Credit Solutions of Am., Inc., 507 F.

Supp. 2d 788, 793 (W.D. Mich. 2007) (citations omitted).  The FAA provides that written

agreements to arbitrate disputes arising out of transactions involving interstate

commerce "shall be valid, irrevocable, and enforceable, save upon such grounds that

exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA

provides for stays of proceedings in federal district courts when an issue in the

proceeding is referable to arbitration [9 U.S.C.] § 3, and for orders compelling arbitration

when one party has failed, neglected, or refused to comply with an arbitration

agreement."  Walker v. Ryan's Family Steak House, Inc., 400 F.3d 370, 376 (6th Cir.),

(quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991), cert. denied,

546 U.S. 1030 (2005).  The same defenses that exist in state contract law, such as

unconscionability, fraud, forgery, duress, mistake, lack of consideration or mutual

obligation, apply to invalidate arbitration agreements.  9 U.S.C. § 2.

B.    Choice of Law

        The first question for the Court to decide is which state law governs this dispute.

Dell asserts that Texas law governs because the agreement contains a choice-of-law

provision.  Specifically, the contract provides:

> 2. Governing Law. THIS AGREEMENT AND ANY SALES
> THEREUNDER SHALL BE GOVERNED BY THE LAWS OF THE STATE
> OF TEXAS WITHOUT REGARD TO CONFLICTS OF LAWS RULES.

(Doc. 5, Exhibit E at ¶ 2). Adler, on the other hand, asserts that Michigan law governs.

In determining which law applies, this Court follows Michigan's choice-of-law rules.

Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 361 (6th Cir. 1993). Michigan

follows Section 187 of the Restatement (Second) of Conflicts of Laws which provides

that a contractual choice of law provision governs unless:

> (a) the chosen state has no substantial connection to the parties or the
> transaction and there is no other reasonable basis for the parties' choice;
> or
>
> (b) application of the law of the chosen forum would be contrary to a
> fundamental policy of a state [Michigan] which has a materially greater
> interest than the chosen state [Texas] in the determination of the particular
> issue.

Id. at 361 (citing 1 Restatement (Second) of Conflict of Laws § 187(2)(b) (1971)). It is

clear that the first prong of the two-part test is easily met. Texas has a substantial

connection to the parties as Dell is headquartered there and five of the other entities

sued are also headquartered there. The Court turns now to the more difficult questions

presented by the Restatement analysis.

1.    Fundamental Policy of Michigan

The Court must decide whether application of Texas law is contrary to a

fundamental policy of Michigan. Adler does not dispute that Texas law would recognize

as valid and enforceable a class action waiver provision in an arbitration agreement.

Whether or not Michigan law would is the essence of the parties' dispute here. Unless

Michigan law holds that a class action waiver provision is unconscionable, no conflict

even exists between Texas and Michigan law.

Adler argues that Michigan has a fundamental policy interest in allowing consumers to bring class actions, under the MCPA, which bars the parties from contracting otherwise. In support of this argument, Adler does not rely on any legislative pronouncement or holdings of any Michigan Court. Other jurisdictions have found class waivers unenforceable where legislation specifically prohibits consumers from waiving their right to bring a class action under their state's consumer protection act. See e.g. Fiser v. Dell, 188 P.3d 1215, 1219 (N.M. 2008). However, there is no such legislative enactment here. Instead, Adler relies more generally on case law noting the underlying purpose of the MCPA is to protect consumers from oppressive business practices and recognizing the importance of the class action vehicle to vindicate those rights. See, e.g., Dix v. American Bankers Life Assur. Co. of Florida, 429 Mich. 410, 417 (1987). Adler fails to cite to any Michigan case law finding that the MCPA prohibits consumers from waiving their ability to bring a MCPA claim on a class wide basis. As Dell aptly notes, courts have allowed waivers of MCPA provisions outside the arbitration context. See Dean v. Haman, No. 259120, 2006 WL 1330325 at *2-3 (Mich. Ct. App. May 16, 2006) (shortening MCPA statute of limitations period from six-years to six-months is permissible).

Adler takes the position that since the MCPA provides consumers with the ability to bring class action lawsuits, this somehow precludes the parties' from contracting that ability away. He has cited to no Michigan case law in support of this proposition. Instead, he relies primarily on two federal district court opinions interpreting Michigan law. Wong v. T-Mobile USA, Inc., No. 05-73922, 2006 WL 2042512 (E.D. Mich. July 20,

8

1996 ) (Edmunds, J.); <u>Lazado v. Dale Baker Oldsmobile, Inc.</u>, 91 F. Supp. 2d 1087 (W.D. Mich. 2000). In those cases, the district courts struck down arbitration agreements that waived class relief as unconscionable. <u>But</u> <u>see</u> <u>Copeland v. Katz</u>, No. 05-73370, 2005 WL 3163296 (E.D. Mich Nov. 28, 2005) (Duggan, J.) (upholding arbitration agreement containing class waiver provision). Neither <u>Wong</u> nor <u>Lazado</u> involved a choice of law provision calling for the application of another state's law so neither addressed the question of whether a consumer's ability to bring a class action under the MCPA is a "fundamental" policy right. Dell argues that Michigan also has an interest in protecting arbitration as a low cost method of dispute resolution. Dell's argument is well taken. Adler has not shown that Michigan has a "fundamental policy interest" in barring class waiver provisions in the context of MCPA claims.

2.    <u>Materially Greater Interest</u>

Even if Michigan could be said to have a "fundamental interest" in prohibiting contractual class action waiver provisions, Adler has not shown that Michigan has a "materially greater" interest in the litigation than Texas, and therefore, Texas law should apply. Adler argues that Michigan has a greater interest in protecting Michigan consumers from unfair consumer practices than Dell has in having its agreements enforced. Dell, on the other hand, argues that it sells its computers across the country via the Internet and that it seeks to have its national commercial activities governed with uniformity. Dell maintains that the uniform application of Texas law promotes affordable prices for Dell products. <u>See</u>, <u>e.g.</u>, <u>Gay v. Credit Inform</u>, 511 F.3d at 369, 390 (3d Cir. 2007) (although Pennsylvania has an interest in protecting its consumers, Virginia has an equal interest in protecting businesses located in its state). Dell relies on <u>Omstead</u>

9

v. Dell, Inc., 473 F. Supp. 2d 1018 (N.D. Cal. 2007), where the district court ruled that Texas had a greater interest in litigation involving the purchase of a Dell computer because the sale was via the Internet; thus, under California law, the sale occurred outside of California.  Id. at 1025.

At oral argument in this case, defense counsel pointed out that the web server was hosted in Texas, all information on the Internet originated in Texas, the order was processed through a Texas server, the title passed outside Michigan, and there has been no suggestion that Texas would not protect Adler.  In fact, as Dell's counsel aptly pointed out at oral argument, under Texas consumer protection law, namely the Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tx. Bus. & Com. Code § 17.41 et seq, consumers who prevail on their DTPA claims may recover costs and attorney fees.  Tx. Bus. & Com. Code § 17.50(d).  Finally, Dell argues that it is headquartered in Texas as are five of the other entities sued.  Given the parties' competing interests for application of their home forum's law, Adler has not shown that Michigan has a "materially greater" interest than Texas.  Accordingly, even if Michigan could be said to have a "fundamental" interest in striking down the class waiver provision, the contract's choice-of-law provision should be enforced and Texas law governs the instant contractual dispute.

C.    The Arbitration Agreement is Enforceable under Texas Law

Adler does not seriously dispute that the arbitration agreement, including the class waiver provision, is enforceable under Texas law.  AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 198 (Tex. App. 2003).  The key case for resolving the question of whether a class waiver provision is unconscionable, and thus, unenforceable, under

Texas law is <u>AutoNation</u>.  In that case, an AutoNation purchaser of a used car filed a purported class action based on the fact that AutoNation charged a $95 documentary fee when Texas law prohibited such a fee in excess of $50.  <u>Id.</u> at 194.  The trial court denied AutoNation's motion to compel arbitration and the Texas Court of Appeals reversed finding that the arbitration clause, and the class waiver provision, were enforceable.  <u>Id.</u>  In that case, the arbitration clause and class waiver provision were printed on the back of plaintiff's standard form used car purchase agreement.  The Texas Court of Appeals rejected arguments that the clause was inconspicuous even where the clause was placed in the middle of several provisions.  <u>Id.</u> at 199.

The consumer argued, as Adler does here, that without class action status, based on the small amount of damages in dispute, consumers would be discouraged from seeking legal redress and businesses like AutoNation would be encouraged to participate in illegal conduct without fear of class action reprisal.  <u>Id.</u> at 200.  The Texas Court of Appeals rejected this argument outright, explaining "[t]his assumes that the right to proceed on a class-wide basis supercedes a contracting party's right to arbitrate under the FAA."  <u>Id.</u>  The Court of Appeals explained that "the primary purpose of the FAA is to overcome courts' refusals to enforce agreements to arbitrate and to ensure that private agreements to arbitrate are enforced according to their terms."  <u>Id.</u>  Since <u>AutoNation</u> was decided, federal district courts applying Texas law have uniformly upheld arbitration agreements including class action waivers.  <u>See</u> <u>e.g.</u> <u>Provencher v. Dell Inc.</u>, 409 F. Supp. 2d 1196, 1205 (C.D. Cal. 2006)  (relying on <u>AutoNation</u> and collecting cases); <u>Carideo v. Dell</u>, 492 F. Supp. 2d 1283, 1287 (W.D. Wash. 2007) ("the state and federal courts to consider Dell's arbitration provision under Texas law have

11

uniformly required the parties to submit to arbitration" --- collecting cases). Thus, under

Texas law, the agreement is enforceable and Dell's motion to compel arbitration shall be

granted.

D.    The Arbitration Agreement is Enforceable under Michigan Law

Even if Michigan law governs, the arbitration agreement is enforceable,

notwithstanding Adler's claims of invalidity. Adler has raised three defenses under

Michigan law: (1) the class action ban improperly prevents the vindication of statutory

rights, (2) the class waiver provision is unconscionable and thus renders the arbitration

agreement unenforceable, and (3) the class action waiver provision is unclear and thus,

void.

1.    The class action ban does not prevent the vindication of statutory rights

Adler first argues that the class action ban in the arbitration agreement is

unenforceable under Michigan law because it conflicts with his rights under the MCPA

to bring a class action lawsuit. Section 445.911(3) of the MCPA provides that "[a]

person who suffers loss as a result of a violation of this act may bring a class action on

behalf of persons residing or injured in this state for the actual damages caused."

Similarly, § 445.360(2) of the MPAA provides that "a person who suffers loss as a result

of a violation of this act may bring an individual or a class action."

Adler relies on Rembert v. Ryan's Family Steak Houses, Inc., 235 Mich. App. 118

(1999), app. denied, 461 Mich. 927 (1999), to support his claim that the arbitration

agreement is unenforceable because it waives his ability to bring a class action.

Rembert involved an agreement to arbitrate in the employment context. In Rembert, the

Michigan Court of Appeals recognized Michigan's strong public policy in enforcing

12

arbitration agreements which upholds the principle of freedom of contract. Id. at 124.

The Rembert Court noted that "Michigan law makes clear, our Legislature and our

courts have strongly endorsed arbitration as an inexpensive and expeditious alternative

to litigation." Id. at 133. Still, the Court of Appeals cautioned that arbitration

agreements may only be enforced where (1) they do not waive substantive statutory

rights and (2) where the arbitration process is fair so that the litigant may effectively

vindicate her statutory rights. Id. at 156.[3] Dell argues that Rembert does not apply

because it states an arbitration-specific defense while the FAA only permits state law

defenses that apply to "any contract." The Court need not address this argument,

because even if Rembert is controlling authority here, Adler fails to show that it

invalidates the arbitration agreement in dispute.

The first question then becomes whether the ability to bring a class action is a

substantive or procedural right. In the federal context, the Supreme Court has noted

that a litigant's right to employ Rule 23 class certification is a "procedural right only,

ancillary to the litigation of substantive claims." Deposit Guaranty Nat'l Bank v. Roper,

445 U.S. 326, 332 (1980). In Wong v. T-Mobile USA, Inc., No. 05-73922, 2006 WL

2042512 (E.D. Mich. July 20, 2006), however, Judge Edmunds explained that even if

the right to bring a class action falls along the lines of a procedural, versus a substantive

---

[3]The Rembert Court relied on the Supreme Court's seminal holding in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) where the Court upheld an arbitration clause in an Age Discrimination in Employment Act case finding that although the claim involved important statutory rights, Congress had not precluded a waiver of judicial remedies. Id. at 30. Similarly, in this case, although the Michigan Legislature has provided consumers with important statutory rights via the enactment of the MCPA, the Michigan Legislature has not expressly provided that these statutory rights can only be vindicated in a judicial forum.

right, that distinction becomes blurred where the consumer's inability to bring a class action effectively bars the claimant from bringing her lawsuit at all.  Id. at *5.  This Court tends to agree with Judge Edmunds that where the amount in dispute is so small that it becomes impractical to bring a claim in the first instance, the right to bring a class action becomes more akin to a substantive right than to a mere procedural right.  This Court must analyze whether Adler may realistically bring his consumer fraud claim via arbitration to determine whether or not the waiver of his right to bring a class action lawsuit amounts to the waiver of a "substantive" right.  In other words, does the class action waiver amount to the waiver of Adler's right to pursue consumer fraud claims at all under the MCPA and the MPPA?  The Court finds that it does not.

Adler argues that his small claim of less than $100 and the prohibitively high costs of individual litigation would prevent him from filing a lawsuit unless he is allowed to bring his claim as a class action.  Dell, on the other hand, argues that the MCPA allows plaintiff to recover actual damages or $250, whichever is greater, plus attorney fees, thus making the filing of individual claims plausible.  MCLA § 445.911(2).  Adler may also recover under the MPAA for actual damages or $250, whichever is greater, plus attorney fees not to exceed $300.  MCLA § 445.360(2).  The possibility exists that Adler may stack his potential recoveries under the MCPA and the MPAA, thus, making his minimum recovery $500, plus attorneys fees and costs.

Adler counters that even a potential recovery of $250 is insufficient to warrant the individual pursuit of his claim.  He claims that the filing, commencement, administrative and participatory hearing session fees associated with bringing a claim with the NAF are well in excess of $250.  Dell, however, asserts that the NAF filing fees may be waived if

14

payment of the fee would prevent vindication of his substantive rights.  (Doc. 5, Exhibit

G, Rule 44(G)). Under the NAF, Adler is entitled to have his arbitration near his home

and may initiate proceedings by e-mail or online.  (Doc. 5, Exhibit G, Rules

7,8,26(A)(2)).  Moreover, Dell argues that individuals sue over comparable amounts

everyday in this city and state.  In support of this argument, Dell relies on the Annual

Report of the Supreme Court of Michigan 2007 at 57 (available at

http://www.courts.michigan.gov/scao/resources/publications/sttistics/2007/2007execsu

m.pdf) which reports that in 2007, over 84,000 small claims cases were filed.

Adler has not come forward with sufficient proof to suggest that the NAF is

inherently unfair or to support his claim that the third-party arbitrators it selects are

biased against consumers.  Adler relies primarily on a September 2007 report prepared

by Public Citizen discussing the use of arbitration in credit card disputes and debt

collection actions.  (Doc. 11, Exhibit D).  These cases are distinct from the consumer

fraud claim in dispute here.  Moreover, many courts have found that NAF arbitration is

fundamentally fair.  See, e.g., Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 95 & n.2

(2000) (Ginsburg, J., concurring in part and dissenting in part) (noting that the NAF has

developed a "model [ ] for fair cost and fee allocation); Provencher, 409 F. Supp. 2d at

1202-03 (NAF "is an inexpensive, convenient and efficient forum" for consumers);

Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 926 (N.D. Tex. 2000) ("NAF will

provide reasonable, fair and impartial forum" to consumers).

In Marsh, the district court discussed the many procedural safeguards within NAF

arbitration that protect consumers from alleged bias.  For example, the NAF rules

provide for the selection of neutral third-party arbitrators for whom the parties retain the

15

right to exercise one preemptory strike and unlimited challenges for cause. 103 F. Supp. 2d at 925. Arbitrators take an oath to be impartial and must disclose any conflicts of interest. Id. All legal remedies and injunctive relief are available and any party may request a written opinion of the arbitrator's ruling. Based on these safeguards, numerous courts have rejected arguments that the NAF is an unfair tribunal. See, e.g., Bank One, N.A. v. Coates, 125 F. Supp. 2d 819, 835-36 (S.D. Miss. 2001) (NAF arbitration is fair and neutral); Davis v. Dell, Inc., No. 07-630, 2008 WL 3843837, *5 (D. N.J. Aug. 15, 2008) ("The NAF has been repeatedly held up as a fair and reasonable forum"); Lux v. Good Guys, Inc., No. SACV05-300CJCANX, 2006 WL 357820, *2 (C.D. Cal. Feb. 8, 2006) (noting fairness and inexpensiveness of the NAF).[4] Adler has failed to show that NAF arbitration will be biased against him or any other grounds for which he alleges such a tribunal would be unfair. In any event, Adler reserves the right to challenge the NAF process as unfair following the entry of the arbitrator's decision in his case.

Given these NAF procedures and the MCPA's recovery of statutory fees and attorney fees, Adler has not shown that without class certification, he would be effectively prohibited from pursuing his claim. In reaching this conclusion, the Court is mindful that Adler is himself a litigator who likely would be able to pursue his claim without the expense of retaining outside counsel. Because Adler has not shown that the class action waiver strips him of substantive rights or that the arbitration procedures

---

[4]Adler also seeks to rely on the fact that the City of San Francisco has filed suit against the NAF alleging that it is an unfair tribunal. That lawsuit remains pending, and thus, is not persuasive authority here.

of the NAF would be unfair, his claim that the arbitration clause is unenforceable under the holding of <u>Rembert</u> must fail.

2.    <u>The class action waiver provision is not unconscionable under Michigan law</u>

Adler argues that the class waiver provision is unconscionable, and thus the arbitration agreement is unenforceable. The parties agree that the test for determining unconscionability under Michigan law is the same two-pronged test that exists under Texas law: plaintiff must prove both procedural and substantive unconscionability. <u>Andersons, Inc. v. Horton Farms, Inc.</u>, 166 F.3d 308, 322 (6th Cir. 1998) (citing <u>Rehmann Robson & Co. v. McMahan</u>, 187 Mich. App. 36 (1969)). Procedural unconscionability addresses the relative bargaining positions of the parties, and whether or not the party with weaker bargaining power had options, and substantive unconscionability refers to the reasonableness of the arbitration provision itself. <u>In Re Halliburton Co.</u>, 80 S.W.3d 566, 571 (Tex. 2002) (citations omitted), <u>cert. denied sub nom</u>, <u>Myers v. Halliburton Co.</u>, 537 U.S. 1112 (2003); <u>Andersons</u>, 166 F.3d at 322 (citing <u>Rehmann Robson & Co. v. McMahan</u>, 187 Mich. App. 36 (1969)). Adler has failed to satisfy either prong of the test.

a.    <u>Procedural Unconscionability</u>

To show procedural unconscionability, Adler must show that he had no real choice but to enter the contract. <u>Hubscher & Son, Inc. v. Storey</u>, 228 Mich. App. 478, 481 (1998); <u>Ozormoor v. T-Mobile USA, Inc.</u>, No. 08-11717, 2008 WL 2528549, *4 (E.D. Mich June 19, 2008); <u>Dillee v. Sisters of Charity</u>, 912 S.W.2d 307, 309 n.4 (Tex. App. 1995). Adler contends that Dell had superior bargaining power and unilaterally drafted the one-sided arbitration provision and class action waiver. Adler argues that he was

forced into a "take it or leave it" adhesion agreement.  According to the affidavit of Dell's attorney, Mary Pape, however, at the time Adler purchased his Dell computer, many of Dell's competitors did not include arbitration provisions in their Terms and Conditions of sale.  (Doc. 5, Exhibit A, ¶ 17).  Adler was free to go to Best Buy, or various other computer and electronics stores, or to purchase another computer online from one of Dell's competitors.  By virtue of the arbitration agreement, Dell maintains that it could offer its computers at lower prices.  Arguably, Adler benefitted from the arbitration clause in this way.

Adler disputes Dell's claim that he could have purchased the computer from a competitor without an arbitration clause or class action waiver since he claims it is unreasonable for him to determine which competitors had such clauses in their agreements and Dell does not spell out which of its competitors did not have such clauses.  In their reply brief, however, Dell submitted the agreement of its competitor Hewlett-Packard, which does not contain an arbitration agreement.   (Doc. 13, Exhibit A).  Adler also claims he was unaware of the arbitration clause until he received his computer.  Dell maintains that he was on notice of the clause based on Internet disclosures and the mailing of an invoice prior to delivery of his computer.  Adler's claim of procedural unconscionability fails because he cannot show that he lacked choices other than the Dell computer he purchased.  Indeed, he easily could have purchased a personal computer elsewhere from another of the multitude of choices currently available to consumers.

b.    <u>Substantive Unconscionability</u>

Even if Adler could show procedural unconscionability, he fails to show

substantive unconscionability. A "term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience." <u>Clark v. Daimler-Chrysler Corp.</u>, 268 Mich. App. 138, 144 (2005) (citations omitted), <u>app. denied</u>, 475 Mich. 875 (2006). Adler has cited to no Michigan case law in support of his argument that the arbitration clause in dispute here is unconscionable. Instead, he relies primarily on two federal district court cases in support of his argument that the class action waiver provision is unconscionable under Michigan law: <u>Wong v. T-Mobile USA, Inc.</u>, No. 05-73922, 2006 WL 2042512 (E.D. Mich. July 20, 2006) (Edmunds, J.) and <u>Lozada v. Dale Baker Oldsmobile, Inc.</u>, 91 F. Supp. 2d 1087 (W.D. Mich. 2000). <u>But</u> <u>see</u> <u>Copeland v. Katz</u>, No. 05-73370, 2005 WL 3163296 (E.D. Mich. Nov. 28, 2005) (Duggan, J.). <u>Wong</u> and <u>Lozada</u> are merely persuasive authority and are not binding on this Court. Because Adler relies on those cases, however, the Court analyzes those cases in its discussion below.

In <u>Wong</u>, plaintiff brought a purported class action against a cellular telephone company accused of overbilling its customers. Plaintiff's specific claim only amounted to $19.74. 2006 WL 2042512, *1. The service contract between plaintiff and defendant made arbitration of disputes mandatory and contained a class action waiver provision. <u>Id</u>. As in this case, the plaintiff argued that the waiver provision was contrary to the policies of the MCPA which contemplates class relief. <u>Id.</u> at *2. Judge Edmunds ruled that the class waiver provision was unenforceable under <u>Rembert</u> because "[w]hether the right to a class action is a substantive or a procedural one, it is certainly necessary for the effective vindication of statutory rights, at least under the facts of this case." <u>Id.</u> at *5. Judge Edmunds then noted that plaintiff's de minimus claim of $19.74 would not

19

be sufficient to warrant the filing of an arbitration claim as that amount would be less than the value in time and energy to arbitrate a claim.  Id.  Where such an insignificant sum is in dispute, Judge Edmunds identified class actions as the only viable enforcement procedure.  Because the class action waiver provision effectively prohibited plaintiff from pursuing her MCPA claim, Judge Edmunds ruled that it was unenforceable.  Id. at *9.

In reaching her conclusion, Judge Edmunds followed the reasoning of the First Circuit in Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006) although recognizing that the Third, Fourth, Seventh, and Eleventh Circuit Courts of Appeals have enforced class action prohibitions in consumer arbitration clauses.  Id. at *4 (citing Johnson v. West Suburban Bank, 225 F.3d 366, 374 (3d Cir. 2000), cert. denied sub nom, Johnson v. Tele-Cash, Inc., 531 U.S. 1145 (2001); Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002); Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 559 (7th Cir. 2003); Randolph v. Green Tree Fin. Corp., 244 F.3d 814, 819 (11th Cir. 2001)).  The First Circuit distinguished its facts from those of its sister circuits because the class waiver provision it was addressing arose in a complicated antitrust action unlike the rather simple consumer Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., claims involved in the majority cases.  Id. at 56.  The First Circuit distinguished a class action waiver provision arising in the antitrust context from those arising in the TILA context for two reasons.  First, in the TILA cases, attorney fees and costs were recoverable or the defendant agreed to pay all costs associated with arbitration.  Id. at 56.  By contrast, in a large antitrust case, the initial outlay of time and money is sizable and would be prohibitive of the filing of individual claims.  Id. at 58.  Second, the TILA cases present a

simple factual issue unlike the complicated issues involved in antitrust litigation where the need for experts is imperative. Id. at 58. Based on the complexity and cost of prosecuting antitrust cases, the First Circuit found that without the right to class certification, there would be no incentive for private enforcement of antitrust claims by consumers. Id. at 59.

Although Judge Edmunds found the reasoning of Kristian to be persuasive in the context of a small consumer fraud claim, this Court is not so convinced. Unlike the complex antitrust litigation at issue in Kristian, plaintiff's MCPA claim here tracks more closely to the TILA cases of the Third, Fourth, Seventh and Eleventh Circuits where arbitration agreements, including either specific class action waivers or the loss of class relief by default, were enforced. Both the MCPA and TILA, allow for class action claims but do not bar agreements to waive such claims. However important Michigan's public policy of protecting consumers from fraud via the MCPA, nothing suggests that this public policy interest trumps Congress' interest in enforcing agreements to arbitrate under the FAA. Moreover, nothing suggests that Adler will be unable to pursue his consumer fraud claim via arbitration. The claim at issue, whether the service agreement was fraudulently included in the purchase price of Adler's Dell computer, is a simple factual question. Unlike antitrust litigation, no experts are needed and no great outlay of legal and financial resources is expected to prosecute the claim. Under these circumstances, the decisions of the majority of Circuit Court of Appeals to address whether arbitration agreements are enforceable, even when they bar class relief, are more applicable to the factual situation presented here.

Adler also seeks to rely on Lozado v. Dale Baker Oldmobile, Inc., 92 F. Supp. 2d

1087 (W.D. Mich. 2000) for the proposition that an arbitration agreement here is unconscionable. However, that case also is factually distinguishable from the instant case. In <u>Lozado</u>, plaintiffs were purchasers of an automobile who lacked sufficient credit to qualify for a conventional loan and so secured financing with the dealer through the sub-prime credit market. <u>Id.</u> at 1090. Plaintiffs alleged that the car dealer violated TILA and the MCPA because they were not provided with a copy of their retail installment contract until over a week after the contract was entered. <u>Id.</u>

As to procedural unconscionability, the court considered the relative bargaining power of the parties, their relative economic strength and their alternative sources of supply. <u>Id.</u> The court noted that the test for determining whether a contract is procedurally unconscionable boils down to the question of whether the plaintiffs had options. <u>Id.</u> The court explained that a contract is "adhesive" where it is prepared by one party and offered on a take it or leave it basis to a party who "cannot obtain the desired product or service except by acquiescing in the form agreement." <u>Id.</u> In <u>Lozado</u>, plaintiff consumers established that they were rushed to sign the retail installment contract and were given no time to review it. <u>Id.</u> Moreover, and most significantly, the dealer failed to provide the plaintiffs with a copy of the contract at the time of signing. <u>Id.</u> The facts of this case are markedly distinguishable. Adler was not rushed to sign an agreement during a personal meeting. He purchased the computer online where he was free to peruse the Terms and Conditions of the agreement at his leisure.

By contrast to <u>Lozado</u>, Adler was given the Terms and Conditions of the agreement several times on the Internet before he placed the order, by e-mail after he

placed his order, was mailed an invoice containing the terms of the agreement before receiving his computer, and received a copy of the Terms and Conditions upon the delivery of his computer.  Also, Adler is a lawyer unlike the unsophisticated consumers in Lozado.  In addition, unlike the consumers with poor credit in Lozado who had few options to obtain financing, Adler had many options for purchasing his computer. Because Adler has failed to show either procedural or substantive unconscionability, he has failed to show that the arbitration agreement is unconscionable under Michigan law.[5]

3.    Whether the class action waiver provision is unclear is for the arbitrator to decide

Adler also argues that the class action waiver provision is unclear and therefore, void.  Although a challenge to the validity of an arbitration agreement is for the Court to decide, a challenge to the contract as a whole is for the arbitrator to decide.  Buckeye Check Cashing, Inc. v. Cartegna, 546 U.S. 440, 445-46 (2006).  Similarly, an argument that one of a contract's provisions renders the whole contract invalid is for the arbitrator to decide.  Id. at 449.  Whether or not the class waiver provision at issue here is unclear remains an issue for the arbitrator to decide in the first instance.

E.    Whether the Contract is Illusory is for the arbitrator to decide.

Adler also argues that the contract is illusory, and thus void, because it contains the following clause: "[t]hese terms and conditions are subject to change without prior written notice at any time, in Dell's sole discretion."  Adler also argues that the contract

---

[5]Having found that the arbitration agreement is enforceable under Texas and Michigan law, the Court does not reach the question raised in Dell's brief as to whether the FAA would preempt the application of state law.

is void for mutuality since only the consumer is required to arbitrate claims, while Dell is

not.  Once again, the question of whether the entire contract is illusory, and thus void,

remains an issue for the arbitrator to decide. Buckeye, 546 U.S. at 449.

F.	The Rulings of Other State Courts are Distinguishable.

Adler argues that there is now a "national trend" of authority finding the same Dell

class action waiver at issue here to be unenforceable as an illegal waiver of consumer

rights.  Looking outside Michigan law, Adler relies on three cases for support for this

proposition.  Those cases are factually distinguishable.  In Wigginton v. Dell, Inc., 890

N.E.2d 541 (Ill. App. 2008), for instance, the plaintiff bought his Dell computer by

telephone, and on this basis, the court distinguished the case from Hubbert v. Dell

Corp., 359 Ill. App.3d 976 (2005), app. denied, 27 Ill.2d 601 (2006), where the court

enforced Dell's class action waiver where the plaintiff purchased the computer over the

Internet and thus, the terms and conditions of the agreement were conspicuously set

forth prior to purchase.  The facts of this case are also notably distinct from the situation

in Fiser v. Dell Computer Corp., 188 P.3d 1215 (N.M. 2008) where the court found a

class action waiver provision was unenforceable.  In Fiser, the court rejected Dell's

argument that Texas law applied because by statute, via the New Mexico Uniform

Arbitration Act, New Mexico declares arbitration clauses that bar consumers from

participating in class actions are unenforceable and voidable.  Id. at 1219.  By contrast,

Michigan has no statutory prohibition against a class action waiver provision in an

arbitration agreement.

Finally, this Court considers Adler's reliance on Brazil v. Dell, No. C-07-01700,

2007 WL 2255296 (N.D. Cal. Aug. 3, 2007).  In that case, the district court found that

24

California law governed, despite a choice of law provision calling for the application of Texas law, because the California Supreme Court had held that class action waivers are unenforceable in those limited circumstances involving a consumer contract of adhesion in a setting where it is alleged that the party with superior bargaining power had defrauded consumers of individually small amounts of money.  Id. at *4 (citations omitted).  By contrast, there is no Michigan Supreme Court case holding that class action waiver provisions are unenforceable.  In sum, the cases from other states which Adler relies on are inapposite.

CONCLUSION

The parties agreed to have the instant dispute resolved by arbitration.  Adler has failed to show that the agreement to arbitrate was unconscionable under Texas or Michigan law, or that the NAF would be an unfair tribunal.  Accordingly, Dell's motion to compel arbitration (Doc. 5) hereby is GRANTED and this case shall be STAYED pending resolution of the arbitration pursuant to 9 U.S.C § 3.

SO ORDERED.

Dated:  December 18, 2008

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 18, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk
