UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BARRY ADLER, on behalf of himself and
all others similarly situated,

                Plaintiff,

v.

                Case No. 08-cv-13170
                Hon. George Caram Steeh

DELL INC., a corporation, BANCTEC, INC.,
a corporation, QUALXSERV, LLC, an entity,
DELL CATALOG SALES, L.P., an entity,
DELL PRODUCTS, L.P., an entity, DELL
MARKETING L.P., an entity, DELL USA L.P.,
an entity, and DOES 1 through 10,

                Defendants.
_____/

<u>OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO LIFT STAY</u>

Plaintiff Barry Adler moves this court to lift the stay in this case on the grounds that the arbitration agreement between the parties is no longer enforceable. For the reasons set forth below, plaintiff's motion to lift the stay is DENIED.

**I. Factual and Procedural Background**

The case arises out of plaintiff's 2004 purchase of a Dell XPS computer. Adler asserts that Dell failed to disclose a first-year opt out option for at-home service, thereby violating various consumer protection laws. At issue is whether this dispute is covered by an arbitration agreement contained in the contract between the parties.

The Contract provides, as follows:

> ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT, AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns, or affiliates (collectively for purposes of this paragraph ("Dell"), arising from or relating to this Agreement,

>its interpretation, or the breach, termination, or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase, SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect (available via the Internet at www.arb-forum.com or via telephone at 1-800-474-2371). The arbitration will be limited solely to the dispute or controversy between Customer and Dell. Any award of the arbitrator(s) shall be final and binding on each of the parties and may be entered as a judgment in any court of competent jurisdiction. Information may be obtained and claims may be filed with the NAF or at P.O. Box 50191, Minneapolis, MN 55405.

On December 18, 2008, the court granted Dell's motion to compel arbitration according to the terms of the Arbitration Agreement and to stay further proceedings pending the results of arbitration. On March 10, 2009, the court denied Adler's motion for certification of an immediate appeal. Based upon recent developments, in this motion, Adler explains that arbitration has become impossible because the National Arbitration Forum (the "NAF") no longer conducts consumer arbitrations. According to Adler, because the designation of NAF as arbitrator is integral to the agreement, the arbitration provision fails altogether, and he should now be permitted to litigate his claim in court. He asks the court to lift the stay and revoke the agreement to arbitrate because of impossibility of performance.

Dell acknowledges that NAF recently stopped accepting new consumer arbitrations but asserts that plaintiff caused this impossibility by deliberately failing to comply with the court's order to arbitrate after plaintiff's request for certification for immediate appeal was denied. Dell continues to seek enforcement of the arbitration agreement with the court appointment of an alternate arbitrator, pursuant to Section 5 of the Federal Arbitration Act. Alternatively, Dell requests a dismissal of the case for failure to prosecute, based upon Adler's refusal to arbitrate the case as earlier ordered by the court.

## II. Analysis

This matter rests on interpreting the Arbitration Clause's provision that disagreements between the parties "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORM (NAF)." Adler suggests that the entire Arbitration Agreement is unenforceable because the requirement that the parties arbitrate before NAF is integral to the agreement and cannot be severed from it. This court disagrees.

> Section 5 of the Federal Arbitration Act provides:
>
> If in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed . . . or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein.

9 U.S.C. § 5. As a general rule, when the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, the court does not void the arbitration agreement. Instead, it appoints a different arbitrator, as provided in the Federal Arbitration Act above. See Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000).[1]

The exception to this rule occurs when "it is *clear* that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself." Id. (quoting McGuire, Cornwell & Blakey v. Grider, 771 F. Supp. 319, 320

---

[1] Michigan provides for a similar resolution. MCL § 600.5015 states "[i]f the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed . . . . if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint 1 or more arbitrators."

(1991)(emphasis added)). In such situations, the Court will not sever the failed term from the rest of the agreement and the entire arbitration provision fails. Id. "Whether the agreement to arbitrate is entire or severable turns on the parties' intent at the time of the agreement was executed, as determined from the language of the contract and the surrounding circumstances." Great Earth Cos. V. Simmons, 288 F.3d 878, 890 (6th Cir. 2002).

In this case, the language of the contract is ambiguous on the intent of the parties in designating NAF, to administer the arbitration. The clause, "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF)" may either refer to the parties' intent to arbitrate all disputes or to the intent of the parties to bring arbitration solely before NAF, or both. At every pass through these words, it is impossible to discern whether the parties intended to embrace arbitration as their exclusive and final recourse for disputes while identifying NAF as a secondary matter to administer the process, or whether they intended NAF arbitration only to be their exclusive and final recourse for disputes. Both interpretations have merit, but there is nothing in the language to indicate which is the intended interpretation.

Two aspects of the agreement offer some support for the conclusion that the intent to arbitrate was paramount, and the designation of NAF secondary. First, the agreement requires NAF rules be used. This would appear to be mere surplusage, except in the case of a substitute arbitration forum, and Adler offered no reason to conclude that NAF rules cannot be applied by a substitute arbitrator. Second, the agreement specifically limits the arbitration process to the customer and Dell, which adds emphasis to the process agreed

4

upon, as opposed to the designated forum.

Further, the agreement lacks any provision for a course of conduct in the event that NAF is unavailable or unwilling to arbitrate disputes between the parties. The lack of an alternative to NAF in the agreement may be taken as indicating a primary intent to arbitrate all disputes, or on the other hand, that the parties contemplated arbitration only if administered by NAF. This too can cut both ways and leaves the court guessing at the intent of the parties. In any event, the agreement falls far short of establishing the exception stated in Brown that arbitration will fail only if it is "clear" that the term in dispute, i.e. that the exclusive and final resolution of all disputes between the parties must be administered by NAF, is "as important a consideration as the agreement to arbitrate itself."

The surrounding circumstances are no more helpful than the language of the contract and the arbitration agreement in resolving this issue. Little can be gleaned from the surrounding circumstances as the details behind this agreement are few and far between. Although Dell drafted the agreement, apparently has employed other arbitrators in other disputes involving this contract language, and now continues to seek arbitration as the chosen process in this case, these facts fall short of settling the intent of the parties.

For his argument, Adler relies on the reasoning articulated in Cairdeo v Dell, Inc., 2009 WL 3485933 (W.D. Wash.). In that case, a Washington District Court addressed the same language at issue in this case. In contrast to this court's analysis, the Cairdeo court determined that the entire arbitration agreement was unenforceable because "the parties' selection of NAF as arbitrator is integral to the arbitration clause." Id. at *4. The court found that several factors supported its decision, including: (1) that the language "clearly and unequivocally selects NAF as arbitrator;" (2) that the agreement requires that NAF

5

apply its own rules; and (3) the agreement does not provide an alternative arbitral forum. The Cairdeo court found that the language, "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF)" meant that the case would be arbitrated exclusively by the NAF. Id. at *4. The Cairdeo court also referred to an Illinois state case where an Illinois appellate court found in a similar contract that the "selection of NAF was integral to the arbitration clause at issue and thus held that §5 could not be used to appoint a substitute arbitrator." Id. At *5 (citing Carr v. Gateway, Inc., No. 5-07-0711 (Ill. App. Ct. 2009).

Dell distinguishes Cairdeo by pointing out that the enforceability of Dell's arbitration agreement in Cairdeo had not been resolved by the Cairdeo Court by the time that NAF stopped accepting new consumer claims, whereas the court in this case had determined that the arbitration agreement was enforceable months before the NAF stopped accepting new consumer claims. Dell also argues that the Cairdeo decision is factually and legally erroneous and states that it intends to appeal the decision. Dell argues that the Cairdeo decision improperly relies on Carr v. Gateway, which is distinguishable from Cairdeo and distinguishable from this case. Dell argues that the contract in Cairdeo provided for fees or penalties in the event a party brought a dispute in a forum other than NAF, which demonstrated that NAF was integral to the contract unlike in the case here. Finally, Dell responds by stating that the NAF is a red herring, because Dell has offered to arbitrate Adler's claim before the AAA or JAMS (or to litigate in small claims court).

This court disagrees with the reasoning of Cairdeo and its application of §5 of the FAA. In reaching its decision, the Cairdeo court opined, "In general, the FAA provides that where the chosen arbitrator is unavailable, the court may appoint a substitute arbitrator."

Id. at *3 (emphasis added). That finding overlooks the actual, mandatory language of the statute in §5. "... or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator ...." Id. (emphasis added). Further, the FAA omits any mention of parsing through the parties' intent. Congress envisioned a situation such as the one presented to this court in which the named arbitrator is no longer available. Either party may request that the court appoint a replacement, one with the "same force and effect as if he or they had been specifically named therein." The tone of the FAA certainly implies that Congress intended that arbitration remain the prevailing method of resolving disputes if one of the parties requests arbitration. Dell has done so in its arguments and briefs.

In short, this court finds more persuasive the reasoning of the 11th Circuit in Brown in refusing to void the arbitration clause because the specified forum (also the NAF in that case) was unavailable. Brown, 211 F. 3d at 1222.

As set forth below, the decision in Brown is more consistent with both Sixth Circuit and Supreme Court authority than the analysis in Cairdeo.

In Morrison v. Circuit City, 317 F.3d 346 (6th Cir. 2003), the Sixth Circuit stated that any doubts regarding arbitrability should be resolved in favor of arbitration. Morrison, 317 F.3d at 675 (citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). It is difficult to justify the abrogation of an entire arbitration agreement, especially when Congress has provided in the Federal Arbitration Act an easy remedy for an arbitrator's unavailability. See McMullen v. Meijer, Inc., 166 Fed. Appx. 164, 169 (6th Cir. 2006). In McMullen, the Sixth Circuit affirmed the trial court's decision to require arbitration even though extensive arbitrator selection provisions were invalidated. The Sixth Circuit

wrote that an additional consideration in whether to sever provisions from an arbitration agreement is the preference indicated by the courts to favor arbitration over litigation. Although McMullen ruled in an employment dispute, the same preference applies in situations such as these where the parties agree to take commercial disputes to arbitration. See also Raddum v, KPMG LLP, 457 F.3d 1054, 1060 (9th Cir 2006)(courts should be reluctant to dismiss arbitration agreements unless there is "evidence that the naming of the [arbitrator] was so central to the arbitration agreement that the unavailability of that arbitrator brought the agreement to an end."). Terminating the agreement to arbitrate could have been accomplished simply by so stating in the agreement. It was not. Consistent with this authority, the court finds that the language of the contract clearly indicates that the parties expected their disputes to be resolved by arbitration. The agreement does not allow for litigation in the event NAF is unavailable to act. The unavailability of NAF to hear the arbitration should not frustrate the overriding intent to arbitrate.

WHEREFORE, IT IS HEREBY ORDERED that plaintiff's motion to lift the stay in this case is DENIED. The court instructs the parties to confer and agree on an alternate arbitrator who will apply the rules of NAF under its Code of Procedure, if possible. If the parties fail to come to an agreement within 30 days from the date of entry of this order, either defendants or plaintiff may submit an application to this court identifying proposed arbitrator(s) for appointment. In the event the parties fail to agree on an alternate arbitrator and no application is presented to this court for appointment by February 1, 2010, this matter shall be dismissed without prejudice.

Dated: December 3, 2009

                                            S/George Caram Steeh
                                            GEORGE CARAM STEEH
                                            UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 3, 2009, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---